1
2
3
4
5
6
7
8

9          UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11            SAN FRANCISCO DIVISION

12
13   NICOLAS MOLINA,                    Case No. 13-cv-04256 NC

14              Plaintiff,              **ORDER GRANTING MOTION TO
                                        COMPEL ARBITRATION,
15        v.                            DENYING REQUEST FOR
                                        ATTORNEYS' FEES, AND
16   SCANDINAVIAN DESIGNS, INC., and    DISMISSING CASE**
     DOES 1 THROUGH 100,
17                                      Re: Dkt. No. 5
              Defendant.
18

19        After Scandinavian Designs fired Nicolas Molina from his warehouse job, Molina

20   filed this action.  The present issue before the Court is whether Molina should be compelled

21   to arbitrate his claims in accordance with the terms of an Arbitration Agreement he signed

22   when Scandinavian Designs hired him.  Because the Court finds that the Arbitration

23   Agreement is an enforceable contract and the parties do not dispute that Molina's claims

24   come within the scope of the Arbitration Agreement, the Court GRANTS the motion to

25   compel arbitration and DISMISSES the case WITHOUT PREJUDICE.

26                           **I. BACKGROUND**

27        Nicolas Molina signed at least four documents that stated that he would be required to

28   arbitrate disputes relating to his employment with Scandinavian Designs.  Dkt. No. 5-1 at 6,

11, 13, 15.  On November 2, 2010, Molina submitted his application for employment with Scandinavian Designs.  Dkt. No. 5-1.  Molina signed the application, which states in part, "I understand and agree that if I am hired, any dispute I may have relating to my employment shall be subject to final and binding arbitration with the Company's Grievance and Arbitration Procedure."  *Id.* at 11.  On November 12, 2010, Scandinavian Designs sent Molina a letter offering him a position as a "Store Warehouse Person" in their San Mateo facility.  *Id.* at 13.  Molina accepted the offer by signing the letter, which stated that "any dispute you may have with the Company, its managers and/or employees relating to your employment or its termination shall be subject to final and binding arbitration to the fullest extent allowed by law."  *Id.*  On November 22, 2010, after Scandinavian Designs hired him, Molina signed an Employee Handbook Acknowledgement Form, which stated, "I further understand and agree that I am covered by the Company's revised 2005 Arbitration Agreement, and that I have received and read my copy of the Procedure."  *Id.* at 15.

The dispute on this motion surrounds the Arbitration Agreement Molina signed when Scandinavian Designs hired him on November 12, 2010.  *Id.* at 5-6.  On that day, Juana Cisneros, an administrative assistant at Scandinavian Designs, gave Molina employment documents to sign, including an "Arbitration Agreement."  Dkt. Nos. 12 at 2; 15-2 at 2.  The Arbitration Agreement provided that "[t]he Company and Employee agree to arbitrate any dispute, claim, or controversy ('claims') that they may have against each other, with the exception of claims for workers' compensation benefits to treat work-related injury or illness."  Dkt. No. 5-1 at 5-6.  Molina declares that Cisneros gave him "a bundle of documents to sign" and that "[s]he did not explain to [him] what [he] was signing.  She just pointed out the papers to sign."  Dkt. No. 12 at 2.  Cisneros, on the other hand, declares that she gave Molina two documents, a one-page job description and a two-page arbitration agreement.  Dkt. No. 15-2 at 2.  Cisneros, who spoke to Molina in both English and Spanish during the November 12 meeting, declares that they "spent about twenty minutes going through the two documents together."  *Id.*  Cisneros says that she "told Mr. Molina to read both of the documents, and specifically told him that if he had any questions or needed any

clarification on anything, he could ask [her]." *Id.*  Cisneros further declares that she "do[es] not recall Mr. Molina telling [her] that he did not understand any of the documents he was supposed to review and sign." *Id.*

Molina filed his complaint on September 13, 2013.  Dkt. No. 1.  Molina asserts claims for Family Medical Leave Act violations, California Family Rights Act violations, and wrongful termination, alleging that Scandinavian Designs told him he did not need to formally request two weeks leave to care for his ill mother, but fired him when he returned to work with a doctor's note.  *Id.* at 3-4.  Scandinavian Designs moved to compel arbitration, seeking attorneys' fees for the motion and either dismissal of the case or a stay pending arbitration.  Dkt. No. 5.

The Court has federal question jurisdiction over the Family Medical Leave Act claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 24 U.S.C. § 1367.  All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).  Dkt. Nos. 7, 9.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), which governs the enforceability of arbitration agreements, reflects a "liberal federal policy favoring arbitration[.]"  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citation omitted).  "[A]rbitration is a matter of contract[.]"  *Id.* (citation omitted).  The FAA requires enforcement of an arbitration clause in a contract unless grounds exist at law or equity to revoke the agreement to arbitrate.  9 U.S.C. § 2; *Concepcion*, 131 S. Ct. at 1745-46.

A party seeking to enforce an arbitration agreement may petition to compel arbitration in the district court.  9 U.S.C. § 4.  When a party petitions to compel arbitration, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.  If the answer is yes to both questions, the court must enforce the agreement."  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"  *Moses H. Cone Mem'l Hosp. v.*

1   *Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

2        "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability"

3   may invalidate an arbitration agreement.  *Concepcion*, 131 S. Ct. at 1745-46 (internal

4   quotation marks omitted).  "To evaluate the validity of an arbitration agreement, federal

5   courts 'should apply ordinary state-law principles that govern the formation of contracts.'"

6   *Rodriguez v. Sim*, No. 08-cv-03982 JL, 2009 WL 975457, at *2 (N.D. Cal. Apr. 10, 2009)

7   (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

8        "When considering a motion to compel arbitration, the court applies a standard

9   similar to the summary judgment standard of Fed. R. Civ. P. 56."  *McCarthy v. Providential*

10  *Corp.*, No. 94-cv-00627 FMS, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994).  "In

11  considering a motion to compel arbitration which is opposed on the ground that no

12  agreement to arbitrate was made, a district court should give to the opposing party the

13  benefit of all reasonable doubts and inferences that may arise."  *Concat LP v. Unilever*,

14  *PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).  "Only when there is no genuine issue of

15  material fact concerning the formation of an arbitration agreement should a court decide as

16  a matter of law that the parties did or did not enter into such an agreement."  *Id.*; *Three*

17  *Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-41 (9th Cir.

18  1991).

19       Where all the claims are arbitrable, a district court may stay the action pending

20  arbitration or dismiss the action.  *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638

21  (9th Cir. 1988).

22                              **III. ANALYSIS**

23       Scandinavian Designs moves the Court to compel arbitration.  Molina opposes the

24  motion, arguing that the Arbitration Agreement he signed is void for lack of mutual assent

25  and unenforceable under the doctrine of unconscionability.  Because the Court finds that the

26  Arbitration Agreement is an enforceable contract and the parties do not dispute that

27  Molina's claims come within the scope of the Arbitration Agreement, the Court orders

28  Molina to submit to arbitration and dismisses this case.

Case No. 13-cv-04256 NC
ORDER GRANTING MOTION TO              4
COMPEL ARBITRATION

**A.    The Arbitration Agreement Is Not Void for Lack of Mutual Assent.**

　　**1.    Limited-English Literacy**

　　Molina argues that the Arbitration Agreement is invalid for lack of mutual assent because he "speak[s] and read[s] very little English" and "did not know that [the English-written document was] an agreement to submit [his] claims to arbitration when [he] signed it." Dkt. No. 12 at 2. Scandinavian Designs disputes whether Molina could in fact read and understand the Arbitration Agreement, since Molina did not tell Cisneros that he could not understand the agreement and Molina's job required him to read documents written in English, including invoices for merchandise in the company's warehouse and company memos. Dkt. No. 15-2 at 3. Moreover, Molina does not allege that he could not read or understand any of the other documents relating to arbitration, including his job application, offer letter, and Employee Handbook Acknowledgement Form, which were all written in English. Dkt. No. 5-1 at 8-11, 13, 15. In any event, under established California law, even if Molina could read very little English, Molina's signature on the Arbitration Agreement manifests his assent to its terms, binding him to the contract.

　　"There is no contract until there is mutual consent of the parties." *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012). "Mutual consent necessary to the formation of a contract 'is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings. . . .'" *Id.* (citations omitted). "Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him." *Randas v. YMCA of Metro. L.A.*, 17 Cal. App. 4th 158, 163 (1993) (citing 1 Witkin, Summary of Cal. Law (9th ed. 1987), § 120, p. 145); *Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 93 (2013) ("[T]he law effectively presumes that everyone who signs a contract has read it thoroughly, whether or not that is true."); *see also Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 78 (1st Cir. 2011) ("[I]t is a general and well established principle of contract law that 'one who is

ignorant of the language in which a document is written, or who is illiterate,' may be bound to a contract by negligently failing to learn its contents."); *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008) ("In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable."); Restatement (Second) of Contracts § 157 cmt. b (1981) ("Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that he did not read them; his assent is deemed to cover unknown as well as known terms."). "Although mutual consent is a question of fact, whether a certain or undisputed state of facts establishes a contract is a question of law for the court." *Deleon*, 207 Cal. App. 4th at 813.

Here, the undisputed facts establish that Molina assented to the Arbitration Agreement. The agreement is titled "Arbitration Agreement" and otherwise purports to be a contract, stating "The Company and Employee agree to arbitrate any dispute, claim, or controversy . . . ." Dkt. No. 5-1 at 5. The final sentence of the Arbitration Agreement states in bold font, "I UNDERSTAND THAT BY SIGNING THIS AGREEMENT, I AM GIVING UP MY RIGHT TO A TRIAL BY JURY." *Id.* at 6. Molina signed the agreement on November 12, 2010. *Id.* Because Molina "sign[ed] an instrument, which on its face is a contract, [he] is deemed to assent to all its terms." *Randas*, 17 Cal. App. 4th at 163 (holding that contract written in English bound plaintiff who was literate in Greek but not in English). Molina's inability to read English does not relieve him of the duty to learn the contents of the contract before signing, and Molina does not cite any authority suggesting otherwise.

Fraud, as a common law defense to contract, can invalidate an arbitration agreement. *Concepcion*, 131 S. Ct. at 1746 ("[A]greements to arbitrate [may] be invalidated by 'generally applicable contract defenses, such as fraud . . . .'"); *see Randas*, 17 Cal. App. 4th at 163 ("It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that

he failed to read the instrument before signing it." (citation omitted)).  But despite knowing all the relevant factual circumstances surrounding the signing, Molina has failed to set forth any facts suggesting that Scandinavian Designs misrepresented the nature or content of the Arbitration Agreement or that Molina did not have an opportunity to learn the terms of the contract. *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 423 (1996) ("One party's misrepresentations as to the nature or character of the writing do not negate the other party's apparent manifestation of assent, if the second party had 'reasonable opportunity to know of the character or essential terms of the proposed contract.'" (citation omitted)). Moreover, when the Court asked at the hearing on the motion to compel whether Molina could provide any additional facts in opposition to the motion, Molina stated that he had no such facts.

Under the circumstances, Molina's alleged limited-English literacy does not give rise to a genuine issue of material fact on the issue of mutual assent.  Molina's signature on the Arbitration Agreement manifests his consent to be bound by the document, and no facts suggest that Scandinavian Designs engaged in fraud, which could render a contract unenforceable.

### 2.    Authority to Sign Arbitration Agreement

Molina also argues that the Arbitration Agreement is unenforceable because Cisneros, who signed the agreement on behalf of Scandinavian Designs, was not authorized to sign for the company. Dkt. No. 10 at 8-9.  Molina uses the following quotation from *Snukal v. Flightways Mfg., Inc.*, 23 Cal. 4th 754, 779-80 (2000) to support his argument that, under California law, a contract involving a corporation is unenforceable unless the corporate agent who signed the contract was authorized to sign on behalf of the corporation:

> To properly prove a contract claimed to be binding on the corporation, it should be shown that it was made on its behalf by someone who had authority to act for it.  It must be shown that the officer was expressly authorized, or that the act was fairly within the implied powers incidental to his office, or that the corporation is estopped to deny his authority by reason of having accepted the benefit of the contract or otherwise.

Dkt. No. 10 at 8.  But *Snukal* does not stand for Molina's proposed legal rule.  The sentence

in *Snukal* that precedes Molina's quotation is: "At common law, the party seeking to enforce a contract with a corporation generally has the burden of establishing the contracting officer's authority to bind the corporation." *Snukal*, 23 Cal. 4th at 779-80. Although that sentence suggests that when a plaintiff seeks to enforce a contract against a corporation, the plaintiff must prove that the corporate agent had authority to sign the contract, it does not suggest that a corporation seeking to enforce a contract against an employee has the same burden. In fact, such a rule would contradict California Civil Code § 3388, which provides that "[a] party who has signed a written contract may be compelled specifically to perform it, though the other party has not signed it, if the latter has performed, or offers to perform it on his part, and the case is otherwise proper for enforcing specific performance." Moreover, even unsigned arbitration agreements are enforceable under the Federal Arbitration Act.

"While the FAA 'requires a writing, it does not require that the writing be signed by the parties.'" *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)); *see also Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) (finding insignificant the fact that the arbitration agreement was unsigned because there was other evidence of agreement to arbitrate). Cisneros's alleged lack of authority to sign contracts for Scandinavian Designs does not raise a genuine issue of material fact regarding mutual assent to the Arbitration Agreement.

Even if Scandinavian Designs had to prove that Cisneros was authorized to sign the Arbitration Agreement, Molina has not offered evidence to create a genuine issue of material fact on the issue. Cisneros's declaration states that she is "fully authorized as an agent of Defendant to sign the arbitration agreements on behalf of Defendant," and Barbara Walt, District Manager for the Bay Area for Scandinavian Designs, confirms in her declaration that Cisneros is authorized to sign arbitration agreements for the company. Dkt. Nos. 15-1 at 2; 15-2 at 2. Molina offers no evidence to rebut these assertions. Molina's declaration merely states that "[he] has no information that [Cisneros] was authorized to

1   sign any documents on behalf of Scandinavian Designs." Dkt. No. 12 at 2. Molina further

2   stated at the December 4 hearing that he was skeptical that Cisneros had authority to sign,

3   but that he had no additional evidence to present to contradict Scandinavian Designs'

4   declarations. Dkt. No. 16. Neither skepticism nor lack of information creates a disputed

5   issue of fact regarding Cisneros's authority to sign the Arbitration Agreement.

6   **B.   The Arbitration Agreement Is Not Unenforceable Based on Unconscionability.**

7   Molina argues that the Arbitration Agreement is unenforceable because it is

8   unconscionable. Dkt. No. 10 at 5. "[U]nconscionability has both a procedural and a

9   substantive element, the former focusing on oppression or surprise due to unequal

10   bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found.*

11   *Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal quotation marks

12   omitted). A contract or clause is only unenforceable under the doctrine of

13   unconscionability if both procedural and substantive unconscionability are present. *Id.*

14   However, procedural and substantive unconscionability do not need to be present in the

15   same degree. *Id.* California courts use a sliding scale approach: "the more substantively

16   oppressive the contract term, the less evidence of procedural unconscionability is required

17   to come to the conclusion that the term is unenforceable, and vice versa." *Id.*; *see also*

18   *Howard v. Octagon, Inc.*, No. 13-cv-01111 PJH, 2013 WL 5122191, at *13 (N.D. Cal. Sept.

19   13, 2013).

20   **1.     Procedural Unconscionability**

21   Molina argues that the Arbitration Agreement is procedurally unconscionable because

22   it is a contract of adhesion that was offered on a take-it-or-leave-it basis. Dkt. No. 10 at 9-

23   10. Scandinavian Designs does not dispute that the Arbitration Agreement was a contract

24   of adhesion offered on a take-it-or-leave-it basis. Dkt. No. 15 at 12. Rather, Scandinavian

25   Designs argues that the adhesive nature of a contract does not always make it procedurally

26   unconscionable. *Id.*

27   To assess procedural unconscionability, "[t]he court focuses on whether the contract

28   was one of adhesion." *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001).

1    "A contract of adhesion is defined as 'a standardized contract, imposed upon the

2    subscribing party without an opportunity to negotiate the terms.'" *Nagrampa v. MailCoups,*

3    *Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006).

4         In this case, the Arbitration Agreement was imposed on Molina on a take-it-or-leave-

5    it basis as a condition of his employment.  Indeed, the Agreement itself states, "I understand

6    that I would not be hired by the Company if I did not sign this Agreement."  Dkt. No. 5-1 at

7    6.  Further, the Arbitration Agreement is a standardized contract that Molina did not

8    negotiate.  *Id.* at 5-6.  The Court therefore finds that the Arbitration Agreement is a contract

9    of adhesion.

10        "Under current California law, it is unclear whether a contract of adhesion is

11   inherently oppressive, and therefore automatically procedurally unconscionable, or whether

12   oppression is a separate element that must be present."  *Nagrampa*, 469 F.3d at 1281.

13   "However, both standards for procedural unconscionability are satisfied by a finding that

14   the arbitration provision was presented on a take-it-or-leave-it basis and that it was

15   oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation

16   and an absence of meaningful choice.'"  *Id.*

17        Both conditions are satisfied in this case.  As noted above, Scandinavian Designs

18   offered Molina the Arbitration Agreement on a take-it-or-leave-it basis.  Further, California

19   courts have noted that there is an inequality of bargaining power in most employment

20   contexts.  *See, e.g.*, *Armendariz*, 24 Cal. 4th at 115 ("[I]n the case of preemployment

21   arbitration contracts, the economic pressure exerted by employers on all but the most

22   sought-after employees may be particularly acute, for the arbitration agreement stands

23   between the employee and necessary employment, and few employees are in a position to

24   refuse a job because of an arbitration requirement.").  Given that Molina was applying for a

25   job as a Store Warehouse Person, the Court can infer that Molina had little bargaining

26   power during the hiring process.  Because the Arbitration Agreement is an adhesion

27   contract offered on a take-it-or-leave-it basis to a person with little bargaining power, the

28   Court finds that that the Arbitration Agreement contains some measure of procedural

Case No. 13-cv-04256 NC
ORDER GRANTING MOTION TO                          10
COMPEL ARBITRATION

unconsciability.  *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1470 (2009)
("[A]dhesion contracts in the employment context typically contain some measure of
procedural unconscionability. . . .").

   Molina argues that the degree of procedural unconscionability is increased by the fact
that Scandinavian Designs did not give him a copy of the arbitration rules.  Dkt. No. 10 at
9-10.  Molina correctly notes that California courts consider the failure to provide a copy of
arbitration rules to be one factor weighing in favor of finding an arbitration agreement
procedurally unconscionable.  *See Sparks v. Vista Del Mar Child & Family Servs.*, 207 Cal.
App. 4th 1511, 1523 (2012), *as modified on denial of reh'g* (Aug. 20, 2012) (noting that
"[n]umerous cases have held that the failure to provide a copy of the arbitration rules to
which the employee would be bound, supported a finding of procedural unconscionability"
(internal quotation marks omitted)); *see also Lane v. Francis Capital Mgmt. LLC*, 224 Cal.
App. 4th 676, 690 (2014) ("We agree that the failure to attach the arbitration rules could be
a factor in support of a finding of procedural unconscionability, but disagree that the failure,
by itself, is sufficient to sustain a finding of procedural unconscionability.").

   Scandinavian Designs, however, argues that the FAA preempts the California rule
because, under the Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 131 S.
Ct. 1740 (2011), courts cannot apply stricter rules to arbitration contracts than they would
apply to other contracts.  Dkt. No. 15 at 9-10.  Because California law allows contracts to
incorporate documents by reference, Scandinavian Designs argues that disallowing this
procedure in the arbitration context, by finding contracts procedurally unconscionability
when parties do not attach the arbitration rules, violates the FAA.  *Id.*

   Some district courts have found that the FAA preempts the California rule when
arbitration rules are incorporated by reference into an arbitration agreement.  *See Ulbrich v.
Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 932-33 (N.D. Cal. 2012) ("Ulbrich essentially
argues that arbitration agreements should be treated differently from other contracts with
respect to incorporation by reference.  This is an argument the Court cannot accept given
the Supreme Court's clear direction that a 'state statute or judicial rule that applies only to

arbitration agreements, and not to contracts generally, is preempted by the FAA.'" (citations omitted)); *McFarland v. Almond Bd. of Cal.*, No. 12-cv-02778, 2013 WL 1786418, at \*5 (E.D. Cal. Apr. 25, 2013) ("[A] bright-line rule such as that stated in *Sparks* is preempted by the FAA under *Concepcion* because it represents a stricter rule than would be applied to other types of contracts."); *but see Lou v. Ma Labs., Inc.,* No. 12-cv-05409 WHA, 2013 WL 2156316, at \*3 (N.D. Cal. May 17, 2013) ("Ulbrich stated that the arbitration rules were incorporated by reference and to contend otherwise would treat arbitration contracts differently than other contracts and contradict Supreme Court authority in *AT & T Mobility LLC v. Concepcion*.  *Concepcion* did not reach this issue and with supporting authority from California and our court of appeals, defendants' sole authority is unpersuasive." (citation omitted)).

However, this Court need not reach the issue of preemption under the FAA because it concludes that (1) the Arbitration Agreement is not substantively unconscionable (as discussed below), and (2) the degree of procedural unconscionability in this case is minimal even though Scandinavian Designs did not give Molina a copy of the AAA Rules.  The Arbitration Agreement in this case clearly incorporates the AAA Rules, stating, "The arbitration will be conducted by a neutral, unbiased arbitrator according to the rules of the American Arbitration Association (AAA)."  Dkt. No. 5-1 at 5.  As Scandinavian Designs correctly points out, the AAA rules are readily accessible online.  Under the circumstances, failing to provide a copy of the AAA rules does not significantly add to the Arbitration Agreement's procedural unconscionability.  *See Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 692 (2014) ("In the absence of oppression or surprise, we decline to find the failure to attach a copy of the AAA rules rendered the agreement procedurally unconscionable."); *Howard v. Octagon, Inc.*, No.13-cv-01111 PJH, 2013 WL 5122191, at \*16 (N.D. Cal. Sept. 13, 2013) (finding the arbitration agreement's clear incorporation of the AAA Rules and the availability of the AAA Rules to weigh against finding procedural unconscionability); *Morga & Medlin Ins. Agency v. QBE Ins. Corp.*, No. 12-cv-0773, 2012 WL 2499952, at \*5 (E.D. Cal. June 27, 2012) ("Morga & Medlin's only basis for alleging

surprise and oppression is that the arbitration provision did not specify which AAA rules

apply and QBE did not attach a copy of the applicable rules.  This is not enough to establish

procedural unconscionability.").

Moreover, the amount of procedural unconscionability in this case is limited by the

fact that the Arbitration Agreement was not buried in a lengthy contract, but was rather

presented as a separate two-page document.  Dkt. No. 15-2 at 2; *Roman*, 172 Cal. App. 4th

at 1470-71 (finding that procedural unconscionability of arbitration provision was limited

because "it was [not] buried in a lengthy employment agreement[,]" but was instead

"contained on the last page of a seven-page employment application . . . . [and] was set

forth in a separate, succinct (four-sentence) paragraph . . . .").

Nevertheless, because the Arbitration Agreement is an adhesion contract offered to a

person with little bargaining power on a take-it-or-leave-it basis, the Court finds that the

Arbitration Agreement contains a minimal degree of procedural unconscionability.  *See,*

*e.g.*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996-97 (9th Cir. 2010) (holding that alternative

dispute resolution agreement was procedurally unconscionable because agreement was

offered on take-it-or-leave it basis and arbitration rules, which were incorporated by

reference, were not attached to the agreement).[1]

### 2.   Substantive Unconscionability

"Merely because a contract is one of adhesion does not automatically render it

unenforceable.  There must be some showing of substantive unconscionability."  *Soltani v.*

---

[1] Molina does not raise the issue of his limited-English literacy in the context of unconscionability.
But Molina's difficulty with reading English would not alter the Court's unconscionability analysis.
*See Poponin v. Virtual Pro, Inc.*, No. 06-cv-04019 PJH, 2006 WL 2691418, at *10 (N.D. Cal. Sept.
20, 2006) (finding no procedural unconscionability despite plaintiff's "limited facility with
English" because "[h]e could have asked a third party to assist him with his English"); *Rodriguez v.
Sim*, No. 08-cv-03982 JL, 2009 WL 975457, at *9 (N.D. Cal. Apr. 10, 2009) (finding no procedural
unconscionability despite plaintiff's limited-English abilities because she did not take the
opportunity to ask questions or have arbitration agreement explained to her by family members or
co-workers); *IJL Dominicana S.A. v. It's Just Lunch Int'l, LLC*, No. 08-cv-5417, 2009 WL 305187,
at *3 n.1 (C.D. Cal. Feb. 6, 2009) (finding only minimal procedural unconscionability where
defendant did not provide plaintiff a copy of contract in Spanish, since there was no evidence that
defendant promised to provide a Spanish translation or that defendant tried to take advantage of
language differences).

1  *W. & S. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001); *Pokorny*, 601 F.3d at 996

2  ("[B]oth procedural and substantive unconscionability must be present for the contract to be

3  declared unenforceable . . . ."). "Substantive unconscionability relates to the effect of the

4  contract or provision" and "focuses on the terms of the agreement and whether those terms

5  are so one-sided as to *shock the conscience*." *Soltani*, 258 F.3d at 1043.

6      Molina argues that the Arbitration Agreement is substantively unconscionable for two

7  reasons. Dkt. No. 10 at 10-11. First, Molina argues that the Arbitration Agreement is

8  substantively unconscionable because it reduces the limitations period for arbitrating his

9  claims. Dkt. No. 10 at 10-11. The Arbitration Agreement provides:

10          The arbitration will be conducted by a neutral, unbiased arbitrator according to
           the rules of the American Arbitration Association (AAA). . . . The Company
11          and the Employee agree to make any *request for an arbitration hearing* within
           the time limit established by law for the type of claim(s) they wish to arbitrate.
12          If the law does not establish a specific time limit for the type of claim(s)
           involved, then the *request for an arbitration hearing* must be made within one
13          year of the events that created the claim. If either the Company or the
           Employee fails to request arbitration of a particular claim within the applicable
14          time period, that party will lose the right to arbitrate the claim.

15  Dkt. No. 5-1 at 5 (emphasis added). Molina argues that the limitations period for arbitrating

16  his claims is shorter than the statute of limitations for filing suit for his claims because the

17  AAA Employment Arbitration rules do not allow a person to "request an arbitration

18  hearing" until after a person has made a demand for arbitration, selected an arbitrator, and

19  had an Arbitration Management Conference. Dkt. No. 10 at 11-12. According to Molina,

20  because the Arbitration Agreement requires that he make a "request for an arbitration

21  hearing" within the statute of limitations period, he would be able to preserve his claims

22  only if he made a "Demand for Arbitration" well before the end of the statute of limitations

23  period, so he could complete the arbitration selection and arbitration management

24  conference in time to "request an arbitration hearing" within the statute of limitations

25  period. *Id.* at 12.

26      Scandinavian Designs argues that the Arbitration Agreement does not reduce the

27  limitations period for Molina's claims because it merely requires that he make a demand for

28  arbitration within the limitations period. Dkt. No. 15 at 10. The Court agrees with

Scandinavian Designs' interpretation of the Arbitration Agreement and AAA Rules.  The

Arbitration Agreement does not reduce the limitations period for Molina's claims.  Rule 4

of the AAA's Employment Arbitration Rules provides:

> Arbitration shall be initiated in the following manner. . . .  In the absence of a
> joint request for arbitration: (i) The initiating party (hereinafter "Claimant[s]")
> shall: (1) File a written notice (hereinafter "Demand") of its intention to
> arbitrate at any office of the AAA, within the time limit established by the
> applicable statute of limitations. . . .  *The Demand shall set forth* the names,
> addresses, and telephone numbers of the parties; a brief statement of the nature
> of the dispute; the amount in controversy, if any; the remedy sought; and
> *requested hearing location.* . . .

AAA Rule 4 (emphasis added).  Rule 8 of the AAA's Employment Arbitration Rules

provides:

> As promptly as practicable after the selection of the arbitrator(s), but not later
> than 60 days thereafter, an arbitration management conference shall be held . .
> . .  At the Arbitration Management Conference the matters to be considered
> shall include, without limitation . . . the date, time, place, and estimated
> duration of the hearing . . . .

AAA Rule 8.  While it is true that under the AAA Rules the date, time, and place of the

arbitration hearing are not set until the Arbitration Management Conference, it does not

follow that Molina could not request an arbitration hearing until the Arbitration

Management Conference occurs.  Indeed, Rule 4 requires that a demand for arbitration

include a request for an arbitration hearing.  AAA Rule 4 ("The Demand shall set forth . . .

[the] requested hearing location.").  Scandinavian Designs therefore correctly states that the

Arbitration Agreement merely requires that Molina make a demand for arbitration within

the statute of limitations period.  Because the Arbitration Agreement does not limit the

statute of limitations period, the Agreement cannot be substantively unconscionable on that

basis.

Second, Molina argues that the Arbitration Agreement is substantively

unconscionable because a letter from Scandinavian Designs in November 2012 "unilaterally

expanded the scope of the mandatory arbitration provision to include Plaintiff's

employment-related claims against the Company's 'managers and/or employees.'"  Dkt.

No. 10 at 12-13.  Scandinavian Designs argues that the letter could not have expanded the

1   Agreement because the Arbitration Agreement states that it cannot be modified unless the

2   modification is signed by the President of the Company, and the President did not sign the

3   letter. Dkt. No. 15 at 11. Molina does not explain why an expansion of the Arbitration

4   Agreement would render the unexpanded, underlying Arbitration Agreement substantively

5   unconscionable. Nevertheless, the Court agrees with Scandinavian Designs. The

6   Arbitration Agreement provides, "This Agreement can only be changed in a written

7   document signed by the President of the Company and the Employee[,]" Dkt. No. 5-1 at 6,

8   and the letter is not signed by the President, *Id.* at 13. Therefore, the letter could not have

9   expanded the Arbitration Agreement, and the Agreement cannot be substantively

10  unconscionable on that basis.

11          Although procedural and substantive unconscionability "need not be present in the

12  same degree[,]" California law requires that they *both* be present in order for a court to

13  exercise its discretion to refuse to enforce a contract or clause under the doctrine of

14  unconscionability." *Armendariz*, 24 Cal. 4th at 114. While Molina has demonstrated a

15  minimal degree of procedural unconscionability, he has made no showing of substantive

16  unconscionability. The Court therefore finds that the Arbitration Agreement is not

17  unenforceable under the doctrine of unconscionability.

18          Because the Arbitration Agreement is not void for lack of mutual assent or

19  unenforceable for unconscionability, the Court must enforce the Agreement. *Lifescan, Inc.*

20  *v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The Court therefore

21  grants Scandinavian Designs' motion to compel arbitration.

22  **C.      Scandinavian Designs' Request for Attorneys' Fees Is Denied.**

23          Scandinavian Designs requests that the Court order Molina and his counsel to pay

24  attorneys' fees incurred in preparing and filing its petition to compel arbitration because

25  Scandinavian Designs alleges that Molina's refusal to submit his claims to arbitration is

26  unreasonable. Dkt. No. 5 at 15.

27          Absent contractual or statutory authorization, a prevailing litigant ordinarily may not

28  collect attorneys' fees. *Miller-Wohl Co., Inc. v. Comm'r of Labor and Indus.*, 694 F.2d 203,

204 (9th Cir. 1982).  The FAA, which is the sole statutory basis for compelling arbitration, does not expressly provide for the payment of attorneys' fees to a litigant who obtains a judicial order compelling arbitration.  *See* 9 U.S.C. § 4.  Moreover, courts have concluded that "such an award is improper because an order compelling arbitration, being merely a preliminary procedural order that is not on the merits and does not materially alter the legal relationship of the parties, does not make the litigant obtaining the order a prevailing party for purposes of a fee award."  *Perry v. Northcentral Univ., Inc.*, No. 10-cv-8229, 2012 WL 1753014, *1 (D. Ariz. May 16, 2012); *see also Pebble Technology, Inc. v. E.L. Wagner Co., Inc.*, No. 07-cv-2127, 2007 WL 4468715, *1 (D. Ariz. Dec. 14, 2007) (finding that defendant's request for attorney fees after succeeding on its motion to compel arbitration was premature as final judgment had not been entered in the case).  Because the Act does not entitle Scandinavian Designs to the fees it incurred in preparing and filing its petition, and because it has succeeded only in changing the forum which will decide the merits of its claims, its request for fees is premature.

But, a court also may award attorneys' fees when a "party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 258-59 (1975).  Because of federal policy favoring arbitration of labor disputes, the Ninth Circuit has held that "bad faith" may be found where a party refuses to submit a dispute to arbitration "without justification."  *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) (holding that award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration).

Scandinavian Designs argues that it is entitled to attorneys' fees it incurred in preparing and filing its petition for arbitration but has not presented evidence that Molina's refusal to arbitrate is in bad faith such that it might warrant an award of attorneys' fees against him.  *See* Dkt. No. 5 at 15:17-25; *Int'l Longshoremen's and Warehousemen's Union, Local 6 v. Cutter Labs.*, 552 F. Supp. 979, 981-82 (N.D. Cal. 1982) (finding that respondent's refusal to arbitrate was in bad faith because the arbitration provision of the

1 parties' collective bargaining agreement was clear, these parties previously arbitrated the

2 same legal issue and the arbitrator had found the agreement violated, and because

3 respondent failed to submit any legal arguments in opposition to petitioner's motion to

4 compel arbitration); *Int'l Union of Painters Allied Trades District Council Local No. 15 v.*

5 *Diversified Flooring Specialist, Inc.*, No. 06-cv-358, 2007 WL 923936, *6 (D. Nev. Mar.

6 23, 2007) (finding that defendant's arguments for refusing to arbitrate were frivolous, given

7 the controlling case law, and the type of dilatory tactic justifying an award of attorneys'

8 fees).  Accordingly, the Court denies Scandinavian Designs' request for attorneys' fees

9 without prejudice.

10 **D.    Dismissal of This Action Is Appropriate.**

11    A district court has discretion to stay or dismiss an action when all the claims are

12 arbitrable.  *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).

13 Scandinavian Designs requests that the Court dismiss this case because all of Molina's

14 claims are subject to arbitration.  Dkt. No. 5 at 15.  Molina requests that the Court stay the

15 case rather than dismissing it, arguing that "the Arbitration Agreement clearly contemplates

16 this Court's continuing jurisdiction over the arbitration process until its final decision and

17 subsequent enforcement" because a clause in the Arbitration Agreement states that the

18 "decision of the arbitrator . . . may be enforced by a court of law."  Dkt. No. 10 at 16.

19    The Court finds that dismissal is appropriate in this case.  "No efficiencies would be

20 achieved if this case were to remain on the docket . . . . [and] even if the parties seek

21 confirmation of the award, [a]ny post-arbitration remedies sought by the parties will not

22 entail renewed consideration and adjudication of the merits of the controversy. . . ."

23 *Anderson Plant, LLC v. Batzer Const., Inc.*, No. 13-cv-02109, 2014 WL 800293, at *5 (E.D.

24 Cal. Feb. 27, 2014) (internal quotation marks omitted); *see DeMartini v. Johns*, No. 12-cv-

25 03929 JCS, 2012 WL 4808448, at *6 (N.D. Cal. Oct. 9, 2012) (dismissing case where all

26 claims were subject to arbitration); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161,

27 1169 (N.D. Cal. 2011) (same).

28 //

**IV. CONCLUSION**

The Court finds that the Arbitration Agreement is enforceable, and therefore orders that Molina submit to arbitration.  The Court denies Scandinavian Designs' request for attorneys' fees without prejudice, and dismisses this case without prejudice.

IT IS SO ORDERED.

Date: April 21, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge